UNITED STATES, Appellee

v.

James M. HUFFMAN, Staff Sergeant
U.S. Army, Appellant.

No. 93-0677.
CMR 9101876.

U.S. Court of Military Appeals.

Argued April 5, 1994.

Decided Sept. 15, 1994.

For Appellant: *Captain Clement B. Lewis, III* (argued); *Lieutenant Colonel James H. Weise, Captain Michael A. Egan, Captain Michael E. Smith* (on brief); *Colonel Malcolm H. Squires, Jr.* and *Major James M. Heaton.*

For Appellee: *Captain Joel B. Miller* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Captain Gregory T. Baldwin, Captain David G. Tobin* (on brief).

*Opinion of the Court*

COX, Judge:

On August 28, 1991, appellant was tried by a military judge sitting as a general court-martial at Hunter Army Airfield, Georgia. Pursuant to his pleas, appellant was found guilty of conspiracy to obstruct justice; willful disobedience of a commissioned officer; signing false official documents (3 specifications); wrongful appropriation (3 specifications); adultery; obstruction of justice;[1] assault consummated by a battery; assault (2 specifications); and communicating a threat (2 specifications), in violation of Articles 81, 90, 107, 121, 134, and 128, Uniform Code of Military Justice, 10 USC §§ 881, 890, 907, 921, 934 and 928, respectively.

Appellant was sentenced to a bad-conduct discharge, confinement for 13 months, and reduction to Private E-1. The convening authority approved the sentence. On Decem-

---

1. This offense was not mentioned in the opinion below. 36 MJ 636 (1992).

ber 18, 1992, the Court of Military Review affirmed the findings and sentence. 36 MJ 636.

■ We granted review of the following issue:

WHETHER APPELLANT SUFFERED ILLEGAL PRETRIAL PUNISHMENT IN VIOLATION OF UCMJ ART. 13.

## FACTS

This case is similar to *United States v. Palmiter*, 20 MJ 90 (CMA 1985). The only significant difference is that this appellant, a member of the Army, was placed, pursuant to an inter-service support agreement, in pretrial confinement in a confinement facility operated by the United States Marine Corps at the Parris Island Marine Depot, Beaufort, South Carolina.[2]

The Court of Military Review made the following findings of fact concerning appellant's pretrial incarceration:

Appellant spent the first night in what he describes as a "six by nine cell." The next morning he told the master gunnery sergeant that "I was very nervous and that I would possibly like to get out of this as soon as I could to wherever the rest of the people were." He was told that he would have to sign a written waiver and that he would then "go out and work and do anything they told me to as a prisoner."

Appellant signed the waiver. Thereafter, he lived with other pretrial detainees and sentenced prisoners. They shared shower, toilet, and recreation facilities. Pretrial detainees wore battle dress uniforms, while adjudged prisoners wore orange jump suits. They marched to the mess hall together but ate on opposite sides of the room. They performed the same details at the same location but were kept apart while performing those details.... At times, Marine guards would require Army detainees to repeat tasks

stating that they were not in accordance with Marine standards. Appellant alleges that junior enlisted Marine guards took particular pleasure in giving orders to appellant, a decorated Viet Nam combat veteran staff sergeant with over eighteen years of active duty.

36 MJ at 636–37. The Court of Military Review appropriately noted that appellant did not complain of unlawful pretrial punishment to the military magistrate who reviewed his pretrial confinement or raise the issue before the military judge at trial. *See generally United States v. Palmiter, supra* at 96. The first time appellant asserted improper conditions of pretrial confinement was on appeal to the court below. 36 MJ at 637.

## ANALYSIS

In *Palmiter*, no agreement was reached between Chief Judge Everett and me concerning the question of pretrial punishment. Specifically, it was my view that no pretrial prisoner can agree to be punished in violation of Article 13, UCMJ, 10 USC § 813. *See State v. Brown*, 284 S.C. 407, 326 S.E.2d 410 (1985) (prisoner cannot agree to castration in lieu of prison). Chief Judge Everett, however, building upon the early precedents of this Court, found "commingling" of prisoners to be pretrial punishment but he would allow a pretrial prisoner to "waive" his privilege not to be commingled.[3] However, it is unnecessary for us to decide today whether commingling of pretrial and sentenced prisoners constitutes a *per se* violation of Article 13, because both Chief Judge Everett and I agreed in *Palmiter* that a prisoner can be commingled with consent and that such would not, absent more, constitute a violation of Article 13.

There are three questions which are presented in this case. First, does failure of the accused to raise objections to the conditions of his confinement with the military magistrate constitute a waiver of his right to liti-

---

2. Fort Stewart, Georgia, a military post having some 20,000 soldiers, has no active stockade. We have come a long way since *United States v. Burton*, 21 USCMA 112, 44 CMR 166 (1971), *overruled* 38 MJ 258 (CMA 1993).

3. I rather doubt that Chief Judge Everett would have allowed a pretrial detainee to waive his right not to be "flogg[ed] or brand[ed]," et cetera. *See* Art. 55, Uniform Code of Military Justice, 10 USC § 855.

gate the question at trial? Second, does failure of an accused to raise the question at trial bar raising the issue on appeal? Last, if appellant can raise the question for the first time on appeal, was he punished in violation of Article 13?

 We answer the first two questions as we suggested in *Palmiter*. If an accused fails to complain of the conditions of his pretrial confinement to the military magistrate or his chain of command, that is strong evidence that the accused is not being punished in violation of Article 13. Similarly, in *United States v. James*, 28 MJ 214 (CMA 1989), we stated that "[w]hile failure to present the question to a military magistrate does not amount to waiver of the issue, it strengthens the Government's argument that it has not violated Article 13." *Id.* at 216 n. 4.

The same rationale is not exactly true if the accused elects not to make an issue of his pretrial confinement at trial. However, we will not invoke waiver unless there is an affirmative, fully developed waiver on the record. Otherwise, we gain nothing except to bring into question ineffective-assistance-of-counsel claims and other collateral matters. *See United States v. Cruz*, 25 MJ 326, 330 (CMA 1987) ("[T]he failure to raise the issue of pretrial punishment at the court-martial, absent some properly disclosed sentence consideration, comes perilously close to inadequate representation by counsel."). Although appellant did not raise the illegality of his pretrial confinement at trial, he likewise did not affirmatively agree that he was not treated illegally. Accordingly, we will not invoke the waiver doctrine concerning his claims of violations of Article 13.

Thus, the question becomes whether appellant was punished pretrial by the terms and conditions of confinement at Parris Island.

Article 13[4] prohibits punishment of pretrial detainees. While there is no single standard as to what constitutes "punishment," the Supreme Court has stated that one significant factor in that judicial calculus is the intent of the detention officials. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), *citing Flemming v. Nestor*, 363 U.S. 603, 613–17, 80 S.Ct. 1367, 1374–76, 4 L.Ed.2d 1435 (1960). In the words of then-Justice Rehnquist:

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment....

441 U.S. at 538–39, 99 S.Ct. at 1873–74 (citation and footnotes omitted). Just as this Court has adopted the *Bell* standard to determine whether the conditions of confinement *imposed* on an accused violate Article 13,[5] we conclude that standard is equally apposite in deciding whether an accused may affirmatively subject himself or herself to prison conditions ordinarily within Article 13 oversight. We see no reason to deny an accused the election to subject himself to certain conditions of confinement that he otherwise would not be required to endure, so long as those conditions do not rise to the

---

**4.** This Article provides:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence....

As we noted in *United States v. James*, 28 MJ 214, 216 (CMA 1989), the standards delineated in this provision of the Uniform Code reflect the protec-

tions afforded all pretrial detainees, civilian or military, by the Due Process Clause of the Constitution. "For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id., quoting Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979) (footnote omitted).

**5.** *See, e.g., United States v. James*, 28 MJ at 216; *United States v. Palmiter*, 20 MJ 90, 95 (CMA 1985).

level of pretrial "punishment" applying the *Bell* standard. Indeed, the very fact that an accused voluntarily submits to a particular condition or restriction in pretrial confinement is strong evidence that the condition is not "punishment." For, as was established in *Bell*, whether a condition of confinement constitutes punishment often hinges on the intent behind imposition of the condition. Certainly, an accused who seeks to alter the conditions of pretrial confinement does so with the intention of bettering his position. Similarly, if it is the Government's desire to punish an accused, it would make more sense for the Government to deny the accused's petition and maintain the status quo.[6]

In the instant case, appellant was confined by himself in a 6–by 9–foot cell. He specifically requested to be removed from the cell so he could commingle with the rest of the prison population at the Parris Island Brig. Appellant apparently believed he would be better off waiving any right to be separated from sentenced prisoners, rather than having a lonely, inactive existence. The Government honored appellant's request, and now he complains of illegal pretrial confinement. We are convinced that appellant's transfer from "solitary confinement" to the general population of the brig was not intended by either the Government or appellant to constitute "punishment." Accordingly, as is strongly evidenced by his request for the very conditions of which he now complains, we hold that appellant was not subjected to conditions amounting to unlawful pretrial punishment.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge WISS concur.

CRAWFORD, Judge, joined by GIERKE, Judge (dissenting in part and concurring in the result):

We dissent because the majority (A) rejects the waiver rule in the Manual for

Courts–Martial without discussion; (B) overlooks the practicality of administering a worldwide justice system; and (C) acts as a supervisory court implying that the judge is powerless to act. The majority would only apply a waiver for an alleged violation of Article 13, Uniform Code of Military Justice, 10 USC § 813, if the judge makes an inquiry of counsel, *and* there is an affirmative waiver on the record.

### (A) Waiver

In our view, this Court must find waiver here because the issue was not raised by motion or objection before the judge and no good cause has been shown for an exception. RCM 907(b)(2)(D)(iv), Manual for Courts–Martial, United States, 1984, provides:

> (b) *Grounds for dismissal.* Grounds for dismissal include the following—
>
> \*　　\*　　\*
>
> (2) *Waivable grounds.* A charge or specification shall be dismissed upon motion made by the accused before the final adjournment of the court-martial in that case if:
>
> \*　　\*　　\*
>
> (D) Prosecution is barred by:
>
> \*　　\*　　\*
>
> (iv) Prior punishment under Articles 13 or 15 for the same offense, if that offense was minor.

RCM 905(e) provides:

> *Effect of failure to raise defenses or objections.* Failure by a party to raise defenses or objections or to make motions or requests which must be made before pleas are entered under subsection (b) of this rule shall constitute waiver. The military judge for good cause shown may grant relief from the waiver. Other motions, requests, defenses, or objections, except lack of jurisdiction or failure of a charge to allege an offense, must be raised before the court-martial is adjourned for that case and, unless otherwise provided in this

---

**6.** We are mindful of the temptation on the part of the Government "to create unduly onerous conditions for pretrial detainees in order to 'encourage' a waiver of their Article 13 rights." *United*

*States v. Palmiter,* 20 MJ at 100 (Everett, C.J., concurring in the result). It should be noted that such governmental action is not condoned or tolerated.

Manual, failure to do so shall constitute waiver.

*See also United States v. McCants,* 39 MJ 91 (CMA 1994).

The purpose of these so-called "raise-or-waive" Manual Rules are to eliminate the expense to the parties and the public of rehearing an issue that could have been dealt with by a timely objection or motion at trial. The Manual Rules must be applied unless inconsistent with the Constitution or Code. Art. 36(a), UCMJ, 10 USC § 836(a). *See, e.g., United States v. Lopez,* 35 MJ 35 (CMA 1992).

While the issue raised in this case might have been avoided if, when determining credit for pretrial confinement, the military judge had asked whether there was any issue of pretrial punishment, a negative response to the judge's inquiry would amount to an affirmative waiver and avoid the present issue. However, there is no requirement that the judge so inquire.

### (B) Practical Implications

The United States Armed Forces operate confinement facilities throughout the world. Personnel change periodically, and conditions at confinement facilities also experience changes, sometimes resulting in the closure and/or realignment of facilities. Because of the turnover of personnel and changing conditions at confinement facilities, it is all the more important for allegations of illegal pretrial confinement to be dealt with in a timely fashion at trial. Once an allegation is raised, the Government must determine who was responsible for operating the facility, interview witnesses at the facility to determine the nature of the confinement conditions, and determine whether the confinement was illegal punishment, in violation of Article 13. Obviously, raising an allegation such as illegal pretrial confinement on appeal for the first time that could have been raised as early as in the pretrial stage places an unnecessary burden on a worldwide justice system. That is precisely why there are Manual Rules invoking waiver.

### (C) Judge

Military trial judges are not powerless to take corrective action if an accused raises an allegation of reprisal. A judge may order confinement at a different facility, release of the accused, or take other appropriate actions to protect an accused from reprisals. That is why the accused should be required to raise the issue at the earliest possible time.

### (D) Conclusion

We would hold that, by not raising the issue of illegal pretrial confinement before the judge, appellant waived this issue. We join in affirming the decision below.