UNITED STATES, Appellee,

v.

Larry D. SMITH, Jr., Cadet Third Class,
U.S. Air Force, Appellant.

No. 99–0932.
Crim.App. No. 32850.

U.S. Court of Appeals for
the Armed Forces.

Argued [1] March 23, 2000.

Decided July 5, 2000.

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, J., EBEL, Cir. J., and SPARR, Dist. J., joined. EFFRON, J., filed an opinion concurring in part and in the result.

---

1. We heard oral argument in this case at the United States Air Force Academy, Colorado Springs, Colorado, without objection from the parties involved. *See* 38 MJ at 137 n. 1.

For Appellant: *Captain Bryan A. Bonner* (argued); *Colonel Jeanne M. Rueth* and *Captain Karen L. Hecker* (on brief); *Major Stephen P. Kelly.*

For Appellee: *Captain Christa S. Cothrel* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.[2]

At trial by general court-martial, appellant was found guilty, pursuant to his pleas, of larceny and conspiracy to commit larceny, in violation of Articles 121 and 81, Uniform Code of Military Justice, 10 USC §§ 921 and 881, respectively. His case was tried by a military judge sitting alone. Appellant entered into a Stipulation of Fact and a Pretrial Agreement. The Pretrial Agreement provided that if the sentence included confinement or a fine, the approved sentence would not include a period of confinement in excess of 24 months nor a fine in excess of $10,000.00. Appellant also agreed to pay restitution in an amount not to exceed $3,000.00.

Appellant faced a maximum punishment of a dismissal, confinement for 36½ years, forfeiture of all pay and allowances, and the possibility of a fine in an unlimited amount. The sentence adjudged by the military judge on April 1, 1997, was a dismissal, confinement for 30 months, and forfeiture of all pay and allowances. On July 18, 1997, the convening authority approved the sentence, except for the confinement, which was reduced to 24 months in accordance with the Pretrial Agreement.

Following acceptance of appellant's guilty pleas, the defense made a timely motion for appropriate relief, requesting that the military judge grant 196 days of pretrial confinement credit, asserting that appellant had been illegally punished in violation of Article 13, UCMJ, 10 USC § 813. The military judge denied the motion, finding that the Government had not restricted appellant with an intent to punish prior to trial. The

judge further found that there were legitimate nonpunitive governmental objectives served by the restrictions placed on appellant and that, therefore, Article 13 was not violated in this case. We granted review of the following issue:

WHETHER APPELLANT WAS SUBJECTED TO ILLEGAL PRETRIAL PUNISHMENT, IN VIOLATION OF ARTICLE 13, UCMJ.

We hold that there was no violation of Article 13.

## FACTS

Appellant was a 22–year–old cadet at the Air Force Academy involved in approximately 40 larcenies from fellow cadets totaling more than 500 items at a value of approximately $20,000,00. Several of these cadets were his close friends. From fellow cadets, he stole a Rolex watch valued at $4,700.00, more than 100 musical compact discs, other watches, jewelry, gold chains, a gold wedding ring, a gold crucifix, name-brand compact disc players, a portable television, a calculator, designer sunglasses, jeans, clothing, and numerous other items. Appellant also stole wallets from his fellow cadets, checkbooks, cash, credit cards, automatic teller cards, drivers' licenses, telephone cards, airline tickets, and personal effects of value to the victims. He accessed many of the credit cards and automatic teller cards for amounts as high as $750.00 per victim.

Appellant stole when his fellow cadets were out of their rooms at class or other academic events, and at night when they were asleep in their rooms. He kept some items, pawned others for cash, and discarded wallets and other items in the trash in an effort to frustrate any subsequent investigation. He kept the cash he stole and used it for "table dances" at a "gentleman's club" in Colorado Springs. He kept the monies he made from items pawned. He kept the monies he received from accessing his fellow cadet's stolen credit cards and automatic tell-

2. Judge David M. Ebel of the United States Court of Appeals for the Tenth Circuit and Judge Daniel B. Sparr of the United States District Court for the District of Colorado sat by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

er cards. By agreement, he shared only with his coconspirator.

On August 19, 1996, appellant was apprehended by Security Police personnel from the Air Force Academy on suspicion of stealing from other cadets. Appellant was then transported to a military confinement facility at Fort Carson, Colorado. He was confined overnight, and a pretrial confinement hearing was held the next morning. Captain (Capt) Verchio conducted the pretrial confinement hearing and determined there was probable cause to believe appellant committed the alleged offenses but that pretrial confinement was not appropriate or necessary. Specifically, Capt Verchio agreed with appellant's defense counsel's argument at the hearing that appellant's commander had not considered lesser forms of restraint before ordering appellant into confinement. In making this determination, Capt Verchio noted that appellant's commander had not considered admitting him "into the cadet transition flight, and restriction to the base or cadet squadron area."

Upon return to the Academy, appellant was transferred to a "transitional squadron." This squadron was known as Cadet Squadron 41 or CS 41. Appellant was housed there from August 20, 1996, until his court-martial on March 31, 1997. Appellant's coconspirator was also housed in CS 41. CS 41 was located behind the 34th Training Wing Operations Center (TWOC). Essentially, TWOC housed the command and control area for the cadets, functioning similar to a command post. Cadets would be assigned to CS 41 on a case-by-case basis, as determined by the Commander, HQ, 34th Training Group, USAFA, for: honor,[3] military deficiency, physical deficiency, UCMJ/OSI investigation, and academic deficiency.

Appellant was assigned to CS 41 on August 20, 1996, by letter from the commander. The assignment referenced appellant's new "Limits, Liberties and Passes," and advised appellant that as a member of the Cadet Wing, he was still obliged to follow the Air Force Cadet Wing Instructions (AFCWI 36–3001). Upon placement in CS 41, appellant was given additional limits beyond those stated in AFCWI 36–3001. Also on August 20, 1996, appellant signed and acknowledged a letter from the 41st Deputy Commander as to CS 41 procedures and policies to include uniforms, housing, inspections, classes, formations, passes and liberties, and so forth.

At trial, appellant made a motion for appropriate relief, requesting that the military judge grant 196 days of pretrial confinement credit, asserting that he had been illegally punished in violation of Article 13. Upon review of the motion, including the supporting testimonial and documentary evidence, the military judge denied the motion. The military judge determined that the Government had not restricted appellant with an intent to punish him prior to trial. The military judge concluded that there were legitimate nonpunitive governmental objectives served by the restrictions imposed upon appellant, and that the restrictions imposed did not violate Article 13. The military judge prepared written essential findings of fact for the record.

## DISCUSSION

### Standard of Review

■ The military judge's factual finding that there was no intent to punish is reviewed under a clearly erroneous standard of review. *United States v. Phillips,* 42 MJ 346 (1995). In the absence of a factual finding relating to intent to punish, this Court will address the issue of illegal pretrial punishment *de novo,* because the question of whether appellant was subjected to unlawful pretrial punishment is a mixed question of fact and law. *Cf. United States v. Huffman,* 40 MJ 225 (CMA 1994).

### Pretrial Restraint/Pretrial Punishment

The question of the necessity for pretrial restraint in the military has undergone a dramatic historical progression in both the

---

3. Honor refers to cadets whose presence in the squadron would be disruptive because the superintendent has rendered a decision to disenroll the cadet for a violation of the Honor Code, which prohibits lying, cheating, or stealing.

necessity for arrest or confinement of servicemembers accused of crimes as well as in the terms and conditions of confinement. *See United States v. Bayhand,* 6 USCMA 762, 21 CMR 84, 1956 WL 4553 (1956). Articles of War in effect in 1775 required an officer who committed a crime to be placed under arrest, and a noncommissioned officer or soldier to be imprisoned until trial. *Id.* at 765–66, 21 CMR at 87–88. Later, Congress softened the absolute requirement for the arrest or confinement of servicemembers charged with crimes, prohibiting confinement unless necessary to insure the accused's presence at trial or based upon the seriousness of the crime. The seriousness-of-the-crime language was later interpreted to mean whether it was foreseeable that an accused might otherwise commit additional serious criminal misconduct. *United States v. Heard,* 3 MJ 14 (CMA 1977).

In the military, the need to prevent serious misconduct is acute. "The business of military units and the interdependence of their members render the likelihood of serious criminal misconduct by a person awaiting trial of even graver concern than in civilian life." A21–18, Manual for Courts–Martial, United States (1998 ed.). Recognizing that confinement or arrest may not be appropriate for everyone accused of a crime, but that some limit on an accused's freedom might be necessary to prevent further criminal activity, pretrial restraint expanded beyond confinement and arrest to include lesser forms of restraint like restriction in lieu of arrest, first set forth in paragraph 20b of the 1951 Manual for Courts–Martial, United States, and conditions on liberty, first set out in RCM 304(a)(1) of the 1984 Manual for Courts–Martial, United States. All four types of pretrial restraint are contained in the current version of RCM 304(a).

Along with the view that confinement or arrest may not be appropriate for everyone accused of a crime, the concept developed that pretrial punishment is prohibited. In *United States v. Bayhand, supra,* the Court found a violation of Article 13 when the accused, who was in pretrial confinement, was required to work with sentenced prisoners, attired in the uniform of a sentenced prisoner. The prohibition against pretrial punishment is codified in Article 13 of the UCMJ, which states:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

Article 13 does not specifically address the other forms of pretrial restraint. However, RCM 304(f) provides:

> Pretrial restraint is not punishment and shall not be used as such. No person who is restrained pending trial may be subjected to punishment or penalty for the offense which is the basis for that restraint. Prisoners being held for trial shall not be required to undergo punitive duty hours or training, perform punitive labor, or *wear special uniforms prescribed only for post-trial prisoners.* This rule does not prohibit minor punishment during pretrial confinement for infractions of the rules of the place of confinement. Prisoners shall be afforded facilities and treatment under regulations of the Secretary concerned.

(Emphasis added.)

The defense contends that the restrictions and conditions placed on appellant after he was released from pretrial confinement did not serve any legitimate nonpunitive governmental purpose and, thus, constituted punishment. They also urge that there was no reason to place appellant in Squadron 41 because there was no evidence as to his continued misconduct or that he was a risk to himself or others. The defense notes that AFCWI 51–201 describes placement in the Squadron as punishment, and that the issue is whether there is a legitimate nonpunitive basis for the action. The defense cites *United States v. Palmiter,* 20 MJ 90 (CMA 1985), and *United States v. Washington,* 42 MJ 547 (A.F.Ct.Crim.App.1995), for the proposition that "Article 13 is violated if, irrespective of intent on the part of the command, an ac-

cused is required to perform duties or is subjected to restrictions that do not serve any *legitimate nonpunitive* purpose." Final Brief at 12.

The Government contends that the conditions of appellant's restriction were not unduly rigorous or excessive, especially when compared to restriction of any other cadet at the Academy. Evidence was introduced at trial indicating that 12 other cadets were placed in the Squadron because of use of cocaine, drunk driving, and failure to go to class. The Government contends "there is absolutely no indication that Academy officials intended to punish him . . . ." Answer to Final Brief at 18. Testimony at trial indicated that since his victims were other cadets, appellant was placed in CS 41 for his own safety.

Hence, the issue in this case is whether there is a legitimate nonpunitive basis for placing appellant in CS 41, and for any of the other restrictions placed upon appellant. *See, e.g., United States v. Cruz*, 25 MJ 326 (CMA 1987)(apprehending individuals in front of unit formation and then ridiculing them was punishment under Article 13); *United States v. Palmiter, supra* (prohibiting a pretrial detainee from wearing clothes except undershorts or requiring him to sit at a desk from 0400 to 2200 hours was considered improper punishment).

The Discussion to RCM 304(c) provides: "The decision whether to impose pretrial restraint, and, if so, what type or types, should be made on a case-by-case basis." It also provides: "The restraint should not be more rigorous than the circumstances require to ensure the presence of the person restrained or to prevent foreseeable serious criminal misconduct."

■ Our cases have identified various factors which may assist in determining whether pretrial restraint has crossed the threshold into pretrial punishment. They are:

1. What similarities, if any, in daily routine, work assignments, clothing attire, and other restraints and control conditions exist between sentenced persons and those awaiting disciplinary disposition?

2. If such similarities exist, what relevance to customary and traditional military command and control measures can be established by the government for such measures?

3. If such similarities exist, are the requirements and procedures primarily related to command and control needs, or do they reflect a primary purpose of stigmatizing persons [a]waiting disciplinary disposition?

4. If so, was there an "intent to punish or stigmatize a person waiting disciplinary disposition?"

Francis A. Gilligan & Fredric I. Lederer, *Court–Martial Procedure* § 4–90.00 at 136–37 (2d ed.1999)(footnotes omitted).

## Conclusion

■ We conclude that the trial judge used the correct test in this case in examining whether there was an intent to punish or stigmatize a person awaiting disciplinary action. *United States v. Phillips, supra.* In this instance, because appellant stole from other cadets and could succumb to future temptation, and because of the possibility of harm to appellant should he continue to be housed in or to visit the cadet dormitory, the trial judge found it was appropriate to place appellant in CS 41 and to restrict his unescorted access to the dormitory, including the cadet store, post office, and barber shop.

As to the other restrictions, the military judge noted that all CS 41 cadets are required to eat their meals in the informal dining room, away from other cadets, have the same restriction concerning attendance at sporting events, and are under the same rules concerning passes and leave. These same restrictions apply not just to those in CS 41 due to UCMJ/OSI investigation, but also to those there due to honor, military deficiency, physical deficiency, and academic deficiency. As such, these restrictions do not constitute an intent to punish or stigmatize a person awaiting disciplinary action.

The military judge also noted that appellant wore Battle Dress Uniforms (BDUs) for approximately 4 months, unlike other cadets

and Squadron 41 cadets who wore the uniform of the day. Prior to and apparently independent of trial, appellant's command, upon noticing that appellant was constantly wearing BDUs, notified him to stop wearing BDUs in lieu of the uniform of the day. The military judge found that appellant was not ordered to constantly wear BDUs, "and may very well have been laboring under a misunderstanding as to the requirements which were explained to him" by his command. Based upon these findings and upon the record, we agree with the military judge that there was not an intent to punish or stigmatize appellant.

Commanders are often faced with the dilemma of where to place servicemembers who present special problems, such as being held for medical reasons beyond retirement age or end of enlistment; losing their security clearance for working in a classified area; losing the trust of their commander when working with security forces; or who are pending administrative discharge for other reasons. RCM 304(h) specifically permits "limitations on a servicemember imposed for operational or other military purposes independent of military justice, including administrative hold or medical reasons."

Appellant's placement in CS 41 could be justified merely on the basis of military purpose under RCM 304(h), *i.e.*, ensuring his safety. The crimes he committed were against other cadets and occurred while he was living in the cadet dormitory. Some of the items appellant took were of sentimental value. Even appellant admitted the likelihood of being subjected to a "blanket party" (wrapped in a blanket and beat up). Appellant's command was also legitimately concerned about the possibility of appellant committing further thefts against his fellow cadets.

We hold that the military judge was correct in denying appellant's request for sentence credit.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

EFFRON, Judge (concurring in part and in the result):

As I noted in my separate opinion in *United States v. McCarthy*, 47 MJ 162, 168 (1997), "the critical question under Article 13 with respect to an allegation of pretrial punishment is whether the facts demonstrate a purpose or intent to punish.... The findings of the military judge as to the historical facts that describe the events at issue may be reviewed under an abuse of discretion standard, but the conclusions of the military judge as to whether such facts demonstrate an intent or purpose to punish should be reviewed under a *de novo* standard as a question of law." (Citations omitted.)

In the present case, the majority states that it is applying a clearly erroneous standard of review as to the findings of the military judge on the issue of intent. However, the majority's detailed analysis of the historical events reflects a *de novo* review. Regardless of the label that the majority appends to its analysis, I agree with its conclusion that the actions taken in this case do not demonstrate a purpose or intent to punish as those terms are applied to an issue under Article 13.