UNITED STATES, Appellee,

v.

Marcus L. STARR, Senior Airman,
U.S. Air Force, Appellant.

No. 99–0999.
Crim.App. No. S29510.

U.S. Court of Appeals for
the Armed Forces.

Argued [1] March 23, 2000.

Decided Aug. 25, 2000.

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, J., EBEL, Cir.J., and SPARR, Dist.J., joined. EFFRON, J., filed an opinion concurring in part and in the result.

For Appellant: *Major Stephen P. Kelly* (argued); *Colonel Jeanne M. Rueth* (on brief).

For Appellee: *Captain Peter J. Camp* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.[2]

Pursuant to his pleas, appellant was convicted of two specifications of larceny and one specification of house-breaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921 and 930. Contrary to his pleas, he was also found guilty of dishonorable failure to pay a just debt, in violation of Article 134, UCMJ, 10 USC § 934. The convening authority approved the sentence of a bad conduct discharge, 4 months' confinement, and reduction to the lowest enlisted grade.

The Court of Criminal Appeals set aside the bad debt conviction and dismissed that charge but affirmed the sentence. We granted review of the following issue:

1. We heard oral argument in this case at the United States Air Force Academy, Colorado Springs, Colorado, without objection from the parties involved. *See* 38 MJ at 137 n. 1.

2. Judge David M. Ebel of the United States Court of Appeals for the Tenth Circuit and Judge Dan-

iel B. Sparr of the United States District Court for the District of Colorado sat by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

WHETHER THE MILITARY JUDGE ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR CONFINEMENT CREDIT FOR UNDERGOING PRETRIAL PUNISHMENT IN VIOLATION OF ARTICLE 13, UCMJ.

For the reasons set forth below, we hold that the judge was correct in denying confinement credit.

## FACTS

Appellant was a bomb dog trainer assigned to the 51st Security Forces Squadron, Osan Air Base, Republic of Korea. On or about February 17, 1997, soon after appellant came under suspicion for the misconduct that formed the basis for the charges here, he was reassigned to "X–Flight." X–Flight was an extraordinary unit within the 51st Security Forces Squadron that was composed solely of personnel who could not, or were not permitted to, perform security forces duties. Such personnel included those who were facing disciplinary or administrative action, under investigation, performing extra duties pursuant to punishment under Article 15, UCMJ, 10 USC § 815, or who were on medical profiles that prevented them from performing normal security forces duties.

Upon being reassigned to X–Flight, appellant was ordered to surrender his Security Police beret to the first sergeant. Only those personnel who were reassigned for disciplinary reasons, however, were required to surrender their berets. The Security Police beret is a symbol of integrity and membership in an elite unit. According to the squadron's first sergeant, personnel were required to surrender their berets when their integrity came into question. One of the stated reasons that berets were surrendered was to correct the individual's behavior. On numerous occasions, appellant unsuccessfully requested to be removed from X–Flight. In addition, trial defense counsel also unsuccessfully requested that the squadron commander remove appellant from X–Flight.

At sentencing, trial defense counsel asked the court to give two-for-one administrative pretrial credit for the period February 17 through November 18, 1997 (275 days)—the period of time appellant was assigned to X–Flight and allegedly subjected to illegal pretrial punishment in violation of Article 13, UCMJ, 10 USC § 813. The military judge denied this motion, finding that: (1) appellant was assigned to X–Flight pending investigation for financial misconduct; (2) X–Flight's purpose was to provide productive work for those who could not carry weapons; (3) berets are required to be surrendered by those facing disciplinary action, but the berets are surrendered in the privacy of the first sergeant's office and no identification is displayed on the berets; (4) those on X–Flight for medical reasons do not wear their berets, but are not asked to surrender them; (5) X–Flight personnel perform necessary work in support of the base mission; and (6) security police are charged with the responsibility of protecting our population and its property, and it is essential that its individuals are above reproach.

Based on these findings, the trial judge held that the surrender of the beret and the placement into X–Flight furthered a legitimate government interest:

> The court finds that the purpose in placing the accused in X Flight and removing his beret was not punishment. Rather it was to ensure that he would be productively utilized pending investigation into the alleged misconduct. As he could not carry a weapon and perform Security Police duties, he was not a fully functioning Security Policeman and, therefore, was asked to surrender his beret.

> The court also finds that the surrender of the beret and the placement into X Flight furthers a legitimate non-punitive governmental purpose. The surrender of the beret pending investigation ensures that the beret continues to symbolize the high standards and integrity that those who proudly wear them and the public they serve have come to view them. Because they are so proudly owned by members of the Security Police, they provide a great incentive to those who must temporarily lose them to gain the trust of their unit, and for those who might contemplate misconduct, the

specter of the loss of the beret provides a clear deterrent.

## DISCUSSION

The prohibition on pretrial punishment is codified in Article 13 of the UCMJ:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

Article 13 does not specifically address other forms of pretrial restraint.

For approximately 9 months, appellant never complained to his first sergeant nor the commander about his assignment to the special detachment or the loss of his beret. Hence, as noted by the defense, the issue in this case is whether there was a legitimate, nonpunitive basis for placing appellant in X–Flight and for ordering appellant to surrender his Security Police beret to his first sergeant. *See, e.g., United States v. Cruz,* 25 MJ 326 (CMA 1987) (apprehending individuals in front of unit formation and then ridiculing them was punishment under Article 13); *United States v. Palmiter,* 20 MJ 90 (CMA 1985) (prohibiting a pretrial detainee from wearing clothes except undershorts or requiring him to sit at a desk between 4:00 a.m. to 10:00 p.m. was considered improper punishment).

As we held in *United States v. Smith,* 53 MJ 168, 170 (2000), we examine the military judge's factual findings as to the intent to punish to see if they are clearly erroneous. In this instance, we hold that they were not.

The trial judge set forth and applied the correct test: was there an intent to punish or stigmatize a person awaiting disciplinary action, and if not, were the conditions (surrender of the beret and placement into X Flight) in furtherance of a legitimate, nonpunitive, government objective. *See United States v. Phillips,* 42 MJ 346 (1995); *see also Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). There was neither illegal punishment nor deprivation of liberty tantamount to confinement to be found in this case. The measures undertaken here simply do not rise to the level of pretrial punishment under Article 13. To the contrary, appellant's limitations were imposed for legitimate, operational, military purposes.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

EFFRON, Judge (concurring in part and in the result):

Although I would apply a de novo standard of review, I agree with the majority's conclusion that the actions taken in this case do not demonstrate a purpose or intent to punish, as those terms are applied to an issue under Article 13. *See United States v. Smith,* 53 MJ 168, 173 (2000) (Effron, J., concurring in part and in the result).