Ramon **VALENTIN**

v.

Brian **MURPHY**, et al.

No. Civ. 3:95CV656(HBF).

United States District Court,
D. Connecticut.

March 31, 2000.

Matthew J. Forstadt, Daniel M. Young, Wofsey, Rosen, Kweskin & Kuriansky, Stamford, CT, for Ramon Valentin, Jr., plaintiff.

Steven R. Strom, Attorney General's Office, Public Safety & Special Revenue, Hartford, CT, for defendants.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

FITZSIMMONS, United States Magistrate Judge.

Raymond Valentin brought this lawsuit against officials of the Connecticut Department of Corrections to challenge the conditions under which he was confined while awaiting trial on federal and state charges in 1994–1995. Valentin, a former correctional officer and state trooper, recently completed a 63 month federal sentence for drug trafficking and began serving a consecutive 15 year state sentence.

The following facts are uncontroverted. Valentin was originally arrested in November 1993, along with a co-defendant, Hartford police officer Jose Morales. [Doc. 77 & 85, ¶ 25]. The two men were charged by state authorities with stealing cash and drugs from drug dealers and re-selling the drugs while serving as law enforcement officers. At their arraignments before Superior Court Judge Raymond Norko, defense attorneys took the position that their clients would be in danger if they were incarcerated at the Hartford Correctional Center while awaiting trial. [Def.Ex. C, U]. Judge Norko noted that the State's Attorney was aware of this danger, and arrangements had been made to house the clients elsewhere. [Def.Ex. C]. "Elsewhere" was the special management unit at Walker Reception Center, then considered the safest facility in the state system. [Def.Ex. T at 12]. At Walker, Valentin was put on "restrictive housing status" and housed in a single cell, from which he was released periodically for recreation, showers, visits and telephone calls.

After a 2½ month confinement at Walker, Valentin posted a $750,000 bail and was released. [Doc. 77 & 85 ¶ 55]. While on bail, he sold narcotics to a federal undercover officer and was arrested on federal drug trafficking charges. He was ordered detained in the custody of the U.S. Marshall pending his federal trial and placed by the marshal in the custody of the DOC, which returned him to Walker on July 27, 1994. [Doc. # 77 ¶ 56].

Valentin was then held at Walker until May 10, 1995. He entered his federal guilty plea in March 1995 and was federally sentenced on June 16, 1995. Valentin's lawsuit focuses on his second period of pretrial confinement at Walker, from July 27, 1994 through May 10, 1995, during which time he alleges that he was put into punitive segregation to force him to cooperate with the States Attorney against his state co-defendant.

Because he has filed a lawsuit under Section 1983 of Title 42, United States Code, Valentin must adduce sufficient evidence from which a reasonable jury could find (1) that the defendants acted under color of state law; (2) that the defendants each personally violated a federal constitutional or statutory right of Valentin; and

(3) that the violation was knowing and intentional. The defendants have moved for summary judgment on all of the plaintiff's claims. For the reasons set out below, defendants' motions **[Doc. 75, 95]** were **GRANTED.**

*The Federal Rights at Issue*

Plaintiff filed his complaint pro se. Construed liberally, it contends that he was placed and kept in segregation without the procedural safeguards provided by the DOC's administrative directives, and thereby deprived of liberty and punished without due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution. He claims that the conditions of his confinement caused him emotional distress, for which he is seeking damages. Plaintiff's counsel, appointed in December 1998, once a trial date was originally set by Judge Chatigny, has vigorously investigated and refined plaintiff's allegations.[1] [Doc. # 26]. The trial date was postponed to allow plaintiff and his counsel to conduct further discovery and to obtain expert testimony. Defendants renewed their motion for summary judgment after the bulk of discovery had been completed. [Doc. 73, 95]. Trial was firmly scheduled to commence October 1, with jury selection set for September 30, 1999.

▪ There is no dispute that pretrial detainees, federal or state, may not be subjected to conditions and restrictions that amount to "punishment" without due process of law. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). The due process standard for determining whether conditions under which pretrial detainees are confined amount to "punishment" is most clearly set out in *Bell v. Wolfish:* whether the complained of restriction is

imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose ... Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' ... Thus if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction on condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

. . .

Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial ..: in addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment.

*Id.* at 1874–1875.

The Supreme Court went on to warn,

in the absence of substantial evidence in the record to indicate that the officials

---

1.  The Court wishes to express its appreciation to plaintiff's court-appointed counsel and his law firm for the effort and resources committed to this appointment. Counsel's diligence left no possible avenue of investigation unpur-

sued; the Court can confidently find that the absence of contravening evidence on the summary judgment motion means that none was available.

have exaggerated their response to these considerations, courts should ordinarily defer to [correctional officials'] expert judgment in such matters.

*Id.* at 1875 n. 23.

■ Here, plaintiff Valentin can produce no evidence that his treatment at Walker was intended by any of the defendants to unconstitutionally punish him. It is uncontroverted that, at the time of Valentin's state arrest, Valentin's lawyer and his codefendant's lawyer expressed concern for their clients' safety, a concern understandable in light of their clients' status as former law enforcement officers. [Def.Ex. C, U]. It is uncontroverted that DOC officials had in their possession information about a specific threat to Valentin's safety from a drug dealer whom he was alleged to have "ripped off," a threat which they documented shortly after his initial incarceration at Walker. [Def.Ex. N]. There is no evidence of any actions by the defendants inconsistent with their stated defense that Valentin was confined at Walker for his own protection. The only evidence proffered by Valentin to prove his allegation that his incarceration was intended to punish him is found in his affidavit:

> "I then asked Mr. Rodriguez [the warden] if I was being confined at Walker because the State Attorneys wanted me placed there. Although still obviously uncomfortable with the question, he nodded his head up and down, indicating "yes," I was placed at Walker in Punitive Seg because of a request from the State Attorneys."

[Pl.Ex. B].

Assuming this statement to be true, it is insufficient on its face to support any inference that the state prosecutors made an assignment request for the improper purpose of inflicting punishment on Valentin, or—more importantly—that any of the defendants knew the request was made for such an improper reason and acquiesced anyway. And the conversation related by Valentin is alleged to have occurred while he was confined on state charges, not after his federal arrest during the second period of confinement at Walker.

Nor does any of the circumstantial evidence cited by the plaintiff—the length of confinement, the nature of the restrictions—support the inference of improper motive necessary to convert protective custody into unconstitutional punishment. The state defendants were not responsible for the length of Valentin's second pretrial confinement; they were contracted to house him for the federal government based on the federal court's pretrial detention order. Having determined initially that Valentin would be at risk in the general state prison population, based on his status as an ex-law enforcement officer, the defendants were not obliged to revisit that decision in the absence of information that the risk had dissipated. Even if the administrative directives applicable to state prisoners applied to him,[2] Valentin has provided no countervailing information that he claims the state ignored which would suggest that the defendants did not make a reasonable assessment of the risk. Nor is there any evidence that Valentin sought a hearing or other forum in which to contest his conditions of confinement at Walker.

■ The nature of the restrictions to which Valentin was subject at Walker were not so onerous on their face as to convert his detention into unconstitutional punishment. "[I]n addition to ensuring the detainee's presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of condi-

---

**2.** The parties have not addressed the significance of plaintiff's status as a federal pretrial detainee. Construing the evidence, as the Court must as this stage of the proceedings, in the light most favorable to the nonmoving party, the Court will accept for purposes of this analysis the highly dubious proposition that the DOC's administrative directives are relevant to the question of whether Valentin's conditions of confinement were punitive.

tions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Bell,* 441 U.S. at 540, 99 S.Ct. 1861. The question for the court (or jury) cannot be whether there were less restrictive alternatives available to accomplish Valentin's safe and secure detention. This Court declines to read such a standard into the due process clause of the Fourteenth Amendment as it would result in precisely the kind of second guessing and meddling against which both Congress and the Supreme Court have warned. Indeed, in determining whether restrictions or conditions are reasonably related to the societal interest in maintaining security and order and operating a correctional institution in a manageable fashion, the Supreme Court has cautioned that

> such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Bell,* 441 U.S. at 548, 99 S.Ct. 1861 (citing *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). The Supreme Court has emphasized that, "Governmental action does not have to be the only alternative or even the best alternative for it to be reasonable, to say nothing of constitutional." *Bell,* 441 U.S. at 542, n. 25, 99 S.Ct. 1861. The Court's inquiry is a limited one.

Thus, considered most favorably to plaintiff, the issue for the Court is whether there is any evidence plaintiff could present to a jury to show that the defendants, having reasonably determined that a risk existed and that Walker was the safest housing unit for him, subjected Valentin to treatment more punitive than that applied to other inmates at Walker, again for the improper purpose of punishing him prior to conviction. Even crediting Valentin's allegations that his telephone calls and reading materials were limited, and that his acquisition of a radio and television were somewhat delayed, his overall treatment was significantly better than the restrictions imposed on Walker inmates in punitive segregation, and there is no evidence that he was treated differently than other Walker inmates in restrictive housing status. He was allowed to leave his cell for showers, phone calls, recreation and visits. He had a radio and a television. And there is no evidence that he complained about the restrictive nature of his protective confinement, either to the defendant DOC officials or to the federal judge who was presiding over his pending criminal case.

■ In addition to his challenge to these various particular conditions of confinement, plaintiff also arguably alleges that defendants violated his constitutional right not to be punished by exposing him to a combination of conditions that caused him to suffer emotional distress. A pretrial detainee cannot be "punished" without due process of law. "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan,* 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The only tangible injury of which Valentin now complains is his emotional distress at having been incarcerated in segregation. Conceivably, had defendants been deliberately indifferent to a known danger that the conditions of confinement would impose severe emotional distress on Valentin, their inaction might constitute a violation of Valentin's federal constitutional rights as a pretrial detainee. *See Liscio v. Warren,* 901 F.2d 274, 276–77 (2d Cir.1990).

■ If there is a federal due process violation based upon an failure of a custodial officer of a pretrial detainee to protect the detainee from emotional distress, it seems clear that the custodian would

have to act in reckless disregard of a substantial risk to the detainee's safety because of a deliberate indifference to the detainee's needs. *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970 (test is whether a prison official subjectively "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it"); *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996) (holding deliberate indifference "may be shown by evidence that the official acted with reckless disregard for the substantial risk posed by the detainee's serious medical condition."). Negligent inaction would not suffice to establish a constitutional violation. *Hanrahan v. City of Norwich*, 959 F.Supp. 118, 122 (D.Conn. 1997) (citing *Daniels v. Williams*, 474 U.S. 327, 332–33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Weyant*, 101 F.3d at 856. Assessing deliberate indifference in this context requires "determination of what the official knew or should have known." *Weyant*, 101 F.3d at 856.

In *Hanrahan v. City of Norwich*, the court noted that, while the Second Circuit has not specifically ruled on the issue as to failure to protect claims involving pretrial detainees, other circuits have held the deliberate indifference standard to be a subjective one, 959 F.Supp. at 122 n. 6, in accordance with *Farmer* (subjective deliberate indifference required to establish a due process claim based on inadequate medical care for a pretrial detainee). *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970. The Supreme Court in *Farmer* stated the test as follows: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. Based on his review of the relevant case law, Judge Chatigny in *Hanrahan* found that the subjective deliberate indifference standard "precludes individual liability unless the custodial official actually knew of a substantial risk that the de-

tainee might commit suicide and violated the detainee's rights by responding with deliberate indifference." *Hanrahan*, 959 F.Supp. at 122, n. 6. The court in *Hanrahan* further found that "no case in which a claim [for failure to prevent the suicide of a pretrial detainee] was tried to a jury in the absence of evidence that the official knew the person for whom he was responsible had threatened to commit suicide, displayed suicidal tendencies or exhibited other symptoms of emotional disturbance showing a vulnerability to suicide." *Id.*, 959 F.Supp. at 122, n. 7 (citing cases).

But there is no evidence that Valentin told anyone, let alone the defendants, that the conditions under which he was confined were causing him emotional distress. Nor is there evidence that plaintiff exhibited any signs or symptoms of emotional distress that should have put defendants on notice in the absence of a complaint by plaintiff. *See Mroz v. City of Tonawanda*, 999 F.Supp. 436, 458–59 (W.D.N.Y.1998) (continuous crying by a sixteen year old while in police custody would not put a reasonable police officer on notice that a substantial risk of suicide was presented.); *Hanrahan v. City of Norwich*, 959 F.Supp. 118, 122 (D.Conn.1997) (granting summary judgment where no evidence that plaintiff exhibited signs or symptoms of emotional disturbance that would put defendant deputy police chief who interviewed decedent on notice of risk of suicide); *Gordon v. City of New York*, 70 N.Y.2d 839, 523 N.Y.S.2d 445, 517 N.E.2d 1331, 1332 (1987) (arrestee's boisterous, irrational and delusional behavior insufficient to put jail guard on notice of possible attempt to scale bars of cell and dive head first into toilet bowl causing injuries); *Liscio v. Warren*, 901 F.2d 274, 276–77 (2d Cir.1990) (physician "on notice" detainee might be suffering from alcohol withdrawal); *Dinnerstein v. United States*, 486 F.2d 34, 36 (2d Cir.1973) (decedent's past history of mental depression and suicidal tendencies provided notice of need for supervision).

Defendants also make their claim for qualified immunity on this critical issue of knowledge, contending that there was nothing about the conditions of confinement in which pretrial detainees were held at Walker which had been judicially determined to be unconstitutional at the time DOC officials determined to hold plaintiff Valentin there. Absent any specific information that Valentin was experiencing emotional distress or any judicially issued notice that the conditions of confinement for pretrial detainees at Walker were constitutionally deficient, defendants cannot be held liable for the injuries of which plaintiff now complains.

*CONCLUSION*

For the reasons stated, defendants' Motions for Summary Judgment [**Doc. 73, 95**] were **GRANTED.**[3]

The Clerk is directed to enter judgment for defendants and close the file.

---

**3.** This was not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge [Doc. # 29] on December 18, 1998, with appeal to the Court of Appeals.