# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201700214

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## KANIEL L. MACDONALD
Lance Corporal (E-3), U.S. Marine Corps
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Keith A. Parrella, USMC.
Convening Authority: Commanding General, Marine Corps
Installations East – Marine Corps Base, Camp Lejeune, North
Carolina.
Staff Judge Advocate's Recommendation: Captain Jenna E. Reed,
USMC.
For Appellant: Commander R.D. Evans, Jr., JAGC, USN.
For Appellee: Captain Luke Huisenga, USMC; Lieutenant Megan P.
Marinos, JAGC, USN.

————————————

Decided 19 July 2018

————————————

Before WOODARD, MARKS, and JONES, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Practice and Procedure
18.2.**

————————————

JONES, Senior Judge:

A military judge sitting as a general court-martial convicted the
appellant, pursuant to his pleas, of willful disobedience of a superior
commissioned officer, eight specifications of assault consummated by a
battery, one specification of adultery, one specification of communicating a

threat, and one specification of negligent endangerment of a child, in violation of Articles 90, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 928, and 934. The military judge sentenced the appellant to 30 months' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged but, pursuant to a pretrial agreement, suspended all confinement in excess of 24 months. Except for the dishonorable discharge, the CA ordered the sentence executed.

The appellant asserts two assignments of error (AOEs): (1) he suffered pretrial punishment in violation of Article 13, UCMJ, entitling him to additional day-for-day credit; and (2) he was denied a fair sentencing hearing by the trial counsel's inflammatory sentencing argument. We disagree and, finding no error materially prejudicial to the substantial rights of the appellant, affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In March 2013, the appellant began working as a correctional specialist at the Marine Corps Installation East Regional Brig (the Brig)[1] at Camp Lejeune, North Carolina. Three and one-half years later he became a pretrial detainee there. Beginning in September 2016, he spent 226 days of pretrial confinement housed in administrative segregation, also known as special quarters. Upon arriving at the Brig, the appellant was first placed in special quarters because his charges included rape, sexual assault, aggravated assault, and the attempted killing of an unborn child. According to the Naval Corrections Manual, Bureau of Naval Personnel Instruction 1640.22 (29 Mar 2011), these charges qualified him as potentially violent and dangerous. But even after the appellant was no longer deemed potentially violent and dangerous, he remained in special quarters because of his former position as a correctional specialist at the Brig. The Brig Officer testified that former staff members of Navy-Marine Corps brigs are always placed in administrative segregation to prevent them from being harassed or harmed by other prisoners, and because their knowledge of brig procedures may pose a threat to the security of the facility, the guards, or other inmates.

With regard to the second AOE, during the government's sentencing argument, the trial counsel argued that: (1) the appellant "preyed on a child;"[2] (2) the appellant "turned his back" on the "honorable traditions of the United States Marine Corps" and had "disgraced the uniform that we

---

[1] This particular facility where the appellant was a detainee is referred to as the "Brig," while military confinement facilities generally are referred to as "brigs."

[2] Record at 80.

[wear;]"[3] and (3) "the Marine Corps does not and will not tolerate within its ranks"[4] servicemembers like the appellant. The defense counsel did not object to any of the statements.

## II. DISCUSSION

### A. Article 13, UCMJ, unlawful pretrial punishment

The appellant renews on appeal his trial motion for relief for illegal pretrial punishment. Specifically, he contends that the 226 days of pretrial confinement he spent in administrative segregation from the general population constituted pretrial punishment in violation of Article 13, UCMJ. Accordingly, he requests that we grant him an additional 226 days of credit beyond the day-for-day credit he received pursuant to *United States v. Allen*, 17 M.J. 126 (C.M.A. 1984). We decline to grant such relief.

"The burden is on [the] appellant to establish entitlement to additional sentence credit because of a violation of Article 13[, UCMJ]." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citing R.C.M. 905(c)(2)). Whether an appellant is entitled to relief for a violation of Article 13, UCMJ, is a mixed question of law and fact. *Id.* (citing *United States v. Smith*, 53 M.J. 168, 170 (2000); *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F. 1997)) (additional citation omitted). "We will not overturn a military judge's findings of fact, including a finding of no intent to punish, unless they are clearly erroneous. . . . We will review *de novo* the ultimate question whether [this] appellant is entitled to credit for a violation of Article 13[, UCMJ]." *Id.* (citing *Smith*, 53 M.J. at 170).

Article 13, UCMJ, states that "[n]o person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence[.]" In other words, Article 13, UCMJ, prohibits two things: (1) pretrial punishment; and (2) conditions of pretrial confinement that are more rigorous than necessary. "The burden is on [the] appellant to establish entitlement to additional sentence credit because of a violation of Article 13[, UCMJ]." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citing RULE FOR COURTS-MARTIAL 905(c)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.)).

---

[3] *Id.* at 78.

[4] *Id.*

*1. No pretrial punishment*

When assessing whether the appellant was punished in pretrial confinement, we initially look to whether the government intended to punish him, "'which is determined by examining the purposes served by the restriction or condition, and whether such purposes are reasonably related to a legitimate governmental objective.'" *Howell v. United States*, 75 M.J. 386, 393 (C.A.A.F. 2016) (quoting *United States v. Palmiter*, 20 M.J. 90, 95 (C.M.A. 1985)). If we find no intent to punish, we then examine whether the particular conditions of the pretrial confinement, which may appear on their face to be punishment, are tied to legitimate nonpunitive governmental objectives. *Id.*

At trial, the appellant argued that his administrative segregation stemmed from "the [B]rig personnel's frustration with [him] from when he was a Correctional Specialist." During his tour there, he was "non-recommended for promotion seven times and received three official counselings[.]"[5] Unconvinced, the military judge concluded that the appellant "ha[d] not presented any evidence demonstrating intent by [B]rig officials to punish [him]."[6]

Finding no intent to punish, the military judge considered whether the appellant's conditions of confinement were an incident of a legitimate nonpunitive governmental objective. *Id.* Where "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Legitimate governmental objectives include protection of the welfare and safety of the confinement facility and the appellant. *See United States v. Mack*, 65 M.J. 108, 109 (C.A.A.F. 2007).

While assessing whether a brig policy or decision is in furtherance of a legitimate governmental objective, courts must remain "reluctant to second-guess the security determinations of confinement officials." *United States v. King*, 61 M.J. 225, 228 (C.A.A.F. 2005) (citing *McCarthy*, 47 M.J. at 167-68). To this end, the Supreme Court has cautioned that courts should accord brig officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547 (citations omitted); *see also Pell v. Procunier*, 417 U.S. 817, 827 (1974) ("Such considerations are peculiarly within the province and professional expertise of correction officials, and, in the absence of substantial evidence in the

---

[5] Appellate Exhibit (AE) V at 3.

[6] AE XII at 4.

record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."). We, too, have "recognize[d] that such personnel are generally much better equipped than are we to make such tough calls." *United States v. Anderson*, 49 M.J. 575, 577 (N-M. Ct. Crim. App. 1998).

Here, the military judge's specific finding that the appellant's administrative segregation "was not intended as punishment"[7] is amply supported by the record.[8] The appellant was placed in special quarters based on an unwritten Brig policy requiring that all former Brig corrections personnel in pretrial confinement be housed in special quarters. The Brig Officer testified that this has been the policy of all Navy-Marine Corps brigs at which he has served over his 20-year career.[9] Still, the appellant contends this policy is arbitrary and capricious, therefore constituting illegal punishment both in general[10] and as applied to his case. We, like the military judge, disagree.

The appellant was confined at the very brig he had worked in for more than three years prior to his pretrial confinement. He was under the watch of security personnel who had recently considered him a colleague and vice versa. Unsurprisingly, the military judge found that as "a former guard, the [appellant] had knowledge of brig procedures, security protocol, and staff members."[11] The military judge concluded that: "the Brig had a legitimate governmental interest in ensuring that the [appellant] did not share this insider information with his fellow detainees lest it pose a threat to the security of the facility, the guards, or his fellow inmates."[12] These findings are not clearly erroneous and are fully supported by the record. The deference accorded brig officials in deciding the classification of detainees applies to "prophylactic *or* preventative measures intended to reduce the incidence of . . . breaches of prison discipline." *United States v. Albers*, 475 U.S. 312, 322 (1986). The Brig policy of segregating the appellant as a former staff member is an appropriate prophylactic measure to "ensure the safety of inmates and

---

[7] *Id.* at 2.

[8] During sentencing, the military judge questioned the Brig Officer whether "there was . . . any intent to place [the appellant] in segregation as a form of punishment[,]" to which the witness responded, "No, sir." Record at 100.

[9] AE XII at 2.

[10] "Any detainee could end up in special quarters for the ostensible 'purposes of control and preserving order.'" Appellant's Brief of 22 Sep 2017 at 8.

[11] AE XII at 4.

[12] *Id.*

corrections personnel and to prevent escape or unauthorized entry." *Bell*, 441 U.S. at 547 (1979).

Moreover, within eight days of switching from watchful guard to patrolled detainee, the appellant "was overheard talking to a fellow detainee about a brig staff member—one of the very concerns underlying the brig policy in question."[13] At his initial 30-day status review, Brig officials decided to continue his administrative segregation "due to his status as a former brig guard" and "based, in part, on his conduct while in confinement."[14]

Isolating correctional specialists from other detainees while in pretrial confinement is not novel to the military. As the military judge noted in his ruling, such a policy is "similar to the isolation often accorded civilian police officers who are placed in jails or prisons."[15] This longstanding practice in civilian correctional facilities has withstood legal scrutiny. *See, e.g.*, *Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995) (noting county jail's policy of placing former police and correctional officers into administrative segregation); *United States v. Zuni*, 506 F.Supp.2d 663, 685 (D.N.M. 2007) (finding it "very likely" that defendant would have to serve his sentence in solitary confinement because of his background as former law enforcement officer), *aff'd*, 273 Fed. Appx. 733 (10th Cir. 2008); *Valentin v. Murphy*, 95 F.Supp.2d 99, 102 (D. Conn. 2000) ("[h]aving determined initially that [a detainee] would be at risk in the general state prison population, based on his status as an ex-law enforcement officer, the defendants were not obliged to revisit that decision in the absence of information that the risk had dissipated").

In sum, segregating the appellant in special quarters served three preeminent safety concerns, any one of which would justify the policy: upholding security within the facility, protecting the guards from the dangers of leaked insider knowledge, and shielding the appellant from potential maltreatment by fellow detainees. Thus, the unwritten policy of placing former correctional specialists in special quarters supported legitimate governmental objectives and did not inflict unlawful pretrial punishment.

The military judge's findings of fact are supported by the record and are not clearly erroneous. Nor are his conclusions of law incorrect. Therefore,

---

[13] AE XII at 4.

[14] *Id.* Such a review process was maintained throughout the appellant's pretrial confinement. The intention was to eventually transfer him from the facility to another brig so that guards and fellow detainees would not recognize the appellant as a correctional specialist. Record at 94.

[15] AE XII at 4.

"we, like the judge, decline to engage in second-guessing the decision of the brig authorities." *McCarthy*, 47 M.J. at 167. We turn next to focus with more particularity on the circumstances of the appellant's pretrial confinement.

*2. No unduly rigorous circumstances of pretrial confinement*

Article 13, UCMJ, also prohibits the imposition of unduly rigorous circumstances during pretrial confinement. "Conditions that are sufficiently egregious may give rise to a permissive inference that an accused is being punished, or the conditions may be so excessive as to constitute punishment." *United States v. Harris*, 66 M.J. 166, 168 (C.A.A.F. 2008) (citations omitted).

Here, the military judge found that the appellant failed to show any unduly rigorous circumstances that would constitute punishment.

> The conditions of the accused's pretrial confinement were identical in almost every respect to his fellow pretrial detainees, except for the obvious segregation. He was housed in an identical cell, ate the same food, and had access to the same visitation and recreation. The accused also received periodic mental health evaluations to ensure he remained mentally fit for assignment to special quarters.[16]

We agree with the military judge. The appellant did not endure any unduly rigorous circumstances; he merely experienced life as a detainee in special quarters. The appellant offers no authority that an accused legitimately placed in special quarters automatically suffers from unduly rigorous circumstances. In fact, this is not the law. The Court of Appeals for the Armed Forces has denied Article 13, UCMJ, relief for conditions worse than those experienced by the appellant.[17] Indeed, the appellant suffered nothing more than the inherent conditions of his legitimate detention—albeit in solitary confinement. The Supreme Court has stated that this inconvenience of being detained is not tantamount to punishment.

> Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. . . . And the fact that

---

[16] *Id.* (footnote omitted). The military judge did note that the appellant received less recreation and exercise time during the weekends than those who were not in special quarters. However, he did "not find that distinction excessive or overly burdensome to the accused." *Id.* at n.7.

[17] *See Harris*, 66 M.J. 168-69 (rejecting the appellant's claim that "the conditions of his pretrial confinement in maximum custody were unduly rigorous in that he was forced to remain in his cell twenty-one hours each day, wear shackles during his two-hour television break, eat his meals in his cell, endure roaches and mice in his cell, and endure dire heat due to a lack of air conditioning").

> such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

*Bell,* 441 U.S. at 537.

Additionally, as the military judge noted, the appellant did not raise pretrial punishment as an issue at arraignment[18] nor at any other time prior to the week of his scheduled providence inquiry.[19] The appellant first complained of the conditions of his pretrial confinement in a motion filed "10 days after the judicially ordered deadline for the filing of pretrial motions."[20] Strikingly, this juncture marked 224 days spent by the appellant in pretrial confinement without "seek[ing] redress from his commanding officer, the military magistrate, the convening authority, or [the trial] Court."[21] This was not for lack of knowledge—to the contrary, the appellant "had a right to appear before the Board in order to dispute his assignment" of administrative segregation, yet declined each time, totaling 10 forgone opportunities.[22] Although he did preserve this issue for appeal, the appellant's failure to raise a claim of pretrial punishment earlier is some evidence that he was not suffering unduly rigorous circumstances. *See King*, 61 M.J. at 228.

The military judge's findings of fact are supported by the record and are not clearly erroneous. Nor are his conclusions of law incorrect. We conclude that the appellant's placement in special quarters was not punishment, and he did not suffer unduly rigorous conditions while in pretrial confinement.

**B. Improper sentencing argument**

The appellant alleges that he was denied a fair sentencing hearing because the government made improper argument. The appellant raises this issue for the first time on appeal, having not objected at trial to any portion of the government's sentencing argument.

We review allegations of improper argument *de novo. United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017). "If proper objection is made, we review for prejudicial error. If no objection is made, we hold the appellant has forfeited his right to appeal and review for plain error. The burden of proof

---

[18] The appellant was arraigned on 15 March 2017. AE XII at 3.

[19] The military judge accepted the appellant's guilty pleas and convicted him of his offenses on 28 April 2017. *Id.*

[20] *Id.* (footnote omitted).

[21] *Id.* at 5.

[22] *Id.* at 3.

under plain error review is on the appellant." *United States v. Andrews*, 77 M.J. 393, 2018 CAAF LEXIS 294, at *6 (C.A.A.F. May 22, 2018) (internal citations omitted). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). We do not find any of the trial counsel's statements to be plain error.

First, the trial counsel's use of the word "prey" encompassed the appellant's violence and neglect to a number of people close to him. The trial counsel argued that the appellant "preyed on a child, preyed on two women, and these were people who should have been able to rely on him more than anyone else for care and protection."[23] He further argued, "[f]ar from protecting them, the accused preyed repeatedly on all of these intimate partners and close immediate family members, by either beating them or neglecting them according to his own selfish whims."[24] Considering the appellant's wide swath of criminal activity, which included violence against two women, his threat to kill his unborn child, and his culpably negligent failure to feed an infant in his care, the trial counsel's characterization—while not ideal—was not beyond the pale.

Second, the trial counsel's argument that the appellant had "turned his back" on the "honorable traditions of the United States Marine Corps" and "disgraced the uniform that we wear" was not error.[25] Contrary to the appellant's argument, the trial counsel's statements did not impermissibly personalize the sentencing argument by asking the military judge to put himself in the place of a victim or a relative. *See United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011). The trial counsel's statements had a direct nexus to two of his offenses under Article 134, UCMJ—wrongfully communicating a threat to kill an unborn child[26] and child endangerment—which require proof of detriment to good order and discipline or service discrediting conduct.[27] During the providence inquiry, the appellant admitted that his conduct was service discrediting because "[i]f the public were to find out that a Marine was threatening a pregnant woman[]"[28] and "[i]f the public

---

[23] Record at 80.

[24] *Id.* at 78.

[25] *Id.*

[26] Charge Sheet preferred on 23 Nov 2016.

[27] Charge Sheet preferred on 27 Jan 2017.

[28] Record at 34.

knew that a Marine wasn't taking care of [his] child,"[29] both "would look badly [sic] on the Marine Corps."[30] Moreover, the trial counsel's comments also have a connection to the appellant's guilty plea to disobeying the lawful command of his superior commissioned officer.[31]

Third, we find no error in the trial counsel's remark that "the Marine Corps does not and will not tolerate within its ranks, men who prey on innocent members of the community, of their family, in this way."[32] We find this comment within the permissible limits of arguing general deterrence for the appellant's egregious criminal conduct. "During sentencing argument, the trial counsel is at liberty to strike hard, but not foul, blows. As a zealous advocate for the government, trial counsel may argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (citations and internal quotation marks omitted). We are cognizant that "the argument by a trial counsel must be viewed within the context of the entire court-martial," and as a result, "our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)); *see also Dunlop v. United States*, 165 U.S. 486, 498 (1897) ("If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation.")).

Assuming the trial counsel's statements were plain and obvious error, we would still decline relief because we see no evidence that the statements resulted in material prejudice to any of the appellant's substantial rights. *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017). Military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997). We "presume that the military judge is able to distinguish between proper and improper sentencing arguments[]" whether or not he noted any improprieties on the record. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007). The appellant's repeated failure to object at trial also indicates "that either no error was perceived or any error committed was inconsequential." *United States v. Sittingbear*, 54 M.J. 737, 740 (N-M. Ct. Crim. App. 2001) (citation

---

[29] *Id.* at 46.

[30] *Id.* at 34, 46.

[31] Charge Sheet preferred on 13 Jan 2017.

[32] Record at 78.

omitted). Lastly, the appellant faced 15 years of confinement, the trial counsel argued for 60 months, and the military judge awarded only 30 months of confinement. We have no doubt that the sentence awarded was supported by the weight of the evidence and was not influenced by any allegedly improper arguments. *See United States v. Frey*, 73 M.J. 245, 251 (C.A.A.F. 2014); *Halpin*, 71 M.J. at 480.

### III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

Chief Judge WOODARD and Senior Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court